DANNY WILBER,

         Plaintiff,

v.                                       Case No. 23-cv-951

CITY OF MILWAUKEE, Special
Representative for THOMAS CASPER,
Deceased, GREGORY SCHULER,
RANDOLPH OLSON, LOUIS JONSON
TIMOTHY DUFFY, JOSEPH ERWIN,
RUBEN BURGOS, MICHAEL CABALLERO,
and KENT CORBETT,

         Defendants.

---

## DEFENDANT CITY OF MILWAUKEE'S ANSWER AND
## AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT

---

NOW COMES the defendant, City of Milwaukee, by their attorney, Tearman Spencer, City Attorney, represented by Jennifer L. Williams, Deputy City Attorney, and Clint B. Muche, Assistant City Attorney, and as and for their answer to the plaintiff's complaint, admits, denies, alleges and states as follows:

### INTRODUCTION

1.      Plaintiff Danny Wilber, an innocent man wrongly convicted of a murder he did not commit, spent almost 18 years behind bars because the Defendant Milwaukee police detectives sued in this action coerced and fabricated false inculpatory evidence and suppressed exculpatory evidence.

**RESPONSE:** The Answering Defendant admits that Wilber was convicted of murder and thereafter incarcerated for a period of years. The remainder of this paragraph contains statements and conclusions, legal or otherwise, to which no answer is required. But if response

is required, the Answering Defendant lacks of knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore denies the same and puts the Plaintiff to his proof thereon.

2.      Plaintiff Wilber was arrested for the murder of David Diaz on February 20, 2004, at the age of 24. Although the physical evidence demonstrated that it was impossible for Plaintiff to have committed the crime, the Defendants' fabricated evidence resulted in his prosecution and wrongful conviction for first-degree murder. He was sentenced to life in prison.

**RESPONSE:** The Answering Defendant admits that Wilber was arrested for the murder of David Diaz and sentenced to prison after trial, but lacks information and knowledge sufficient to form a belief as to the truth of the remaining allegations therein, and therefore denies the same and puts the Plaintiff to his proof thereon.

3.      After years of post-conviction efforts during which Plaintiff steadfastly maintained his innocence, a federal district court vacated his conviction on August 4, 2020. The state unsuccessfully appealed that decision, forcing Plaintiff to languish in prison for another year before the Seventh Circuit affirmed the reversal of his conviction.

**RESPONSE**: The Answering Defendant admits and affirmatively asserts that Plaintiff's petition for relief under 28 U.S.C. § 2254 was granted, and subsequently affirmed, because Plaintiff was visibly shackled during closing arguments, but lacks information and knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

4.      On December 22, 2021, after nearly two decades of incarceration, Plaintiff was released on bond pending a possible retrial. Several months later, the Milwaukee County District Attorney's Office formally dismissed his case.

**RESPONSE**: The Answering Defendant lacks information and knowledge sufficient to form a belief as to the truth of the matters asserted herein, and therefore denies the same and puts Plaintiff to his proof thereon.

5.      Plaintiff Wilber has spent much of his adult life in prison, separated from his family and friends and robbed of the most basic freedoms. He files this civil rights action to

bring Defendants' misconduct to light, to hold Defendants accountable for their actions, and to seek justice for the many years of his life that he lost for a crime he did not commit.

**RESPONSE**: This paragraph contains statements and conclusions, legal or otherwise, to which no response is required; but if response is required the Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted, and therefore denies the same and puts Plaintiff to his proof thereon.

## JURISDICTION AND VENUE

6.     Plaintiff brings this action pursuant to the Civil Rights Act of 1871, ch. 22, § 1, 17 Stat. 13, 42 U.S.C. § 1983 to redress the deprivation under color of law of his rights as secured by the United States Constitution.

**RESPONSE:**  This paragraph contains statements and conclusions, legal or otherwise, to which no response is required; but if response is required the Answering Defendant denies any allegation or inference in this paragraph suggesting that the defendant is, in any way, either liable to Plaintiff or violated his constitutional rights.

7.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

**RESPONSE**:  This paragraph contains statements and conclusions, legal or otherwise, to which no response is required; but if response is required the Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted, and therefore denies the same and puts Plaintiff to his proof thereon.

8.     Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred in this district.

**RESPONSE**:  This paragraph contains statements and conclusions, legal or otherwise, to which no response is required; but if response is required the Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted, and therefore denies the same and puts Plaintiff to his proof thereon.

## PARTIES

9.     Plaintiff Danny Wilber is a 44-year-old Black and Indigenous man and was at all times relevant to this suit a resident of the State of Wisconsin.

**RESPONSE**:  The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted, and therefore denies the same and puts Plaintiff to his proof thereon.

10.     At all times relevant to this suit, Defendants Gregory Schuler, Randolph Olson, Louis Johnson, Timothy Duffy, Joseph Erwin, Ruben Burgos, Michael Caballero, and Kent Corbett were police detectives employed by the Milwaukee Police Department.

**RESPONSE**:  The Answering Defendant admits that defendants named in this paragraph were previously employed by the Milwaukee Police Department and attained the rank of Detective, but lacks knowledge or information sufficient to form a belief as to what is contemplated by "all times relevant to this suit," and therefore denies the allegations in this paragraph and puts Plaintiff to his proof thereon.

11.     Each of these named Defendants is sued in his individual capacity, and each acted under color of law and within the scope of his employment.

**RESPONSE**:  The Answering Defendant lacks knowledge or information sufficient to form a belief as whether the named officer defendants acted under color of law or within the scope of their employment, and therefore denies the same and puts Plaintiff to his proof thereon.

12.     Defendant Special Representative for Thomas Casper, to be subsequently appointed by the Court, is named because Thomas Casper is deceased. At all times relevant to this suit, Thomas Casper was a police detective employed by the Milwaukee Police Department. He is sued in his individual capacity and acted under color of law and within the scope of his employment.

**RESPONSE**:  This paragraph contains multiple allegations. Admit that Defendant Thomas Casper, who is deceased, was previously employed by the Milwaukee Police Department.  The Answering Defendant lacks knowledge of information sufficient to form a belief as to the truth

of the remaining allegations contained in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

13.     Defendant City of Milwaukee is a Wisconsin municipal corporation, was the employer of the individual Defendants, and is and was at all times relevant to this Complaint responsible for the policies, practices, and customs of the Milwaukee Police Department.

**RESPONSE**:  Admit that Defendant City of Milwaukee is a Wisconsin municipal corporation, and that the City of Milwaukee previously employed the above-named individual Defendants ("officer-defendants").  The Answering Defendant lacks knowledge or information sufficient to form a belief as to what is meant by "all times relevant," and therefore denies the remaining allegations contained in this paragraph and puts Plaintiff to his proof thereon.

## FACTUAL ALLEGATIONS

### The Crime

14.     In the early morning hours of January 31, 2004, 23-year-old David Diaz was shot and killed in his Milwaukee home during an after-hours party.

**RESPONSE**: Admit.

15.     Earlier that night, a large group of people who were out drinking at a local bar had been invited to continue the party at Diaz's home after the bar closed.

**RESPONSE**:  Based on Plaintiff's representation, admit.

16.     Plaintiff Danny Wilber (who was sometimes referred to by his nickname, "Slim") was among the guests.

**RESPONSE**:  Admit.

17.     Plaintiff was in the kitchen when he got into an argument with a partygoer, Oscar Niles, and grabbed Niles's neck chain.

**RESPONSE**:  Based on Plaintiff's representation, admit.

18.     At that point, Richard Torres, one of the residents of the house, and Jeranek Diaz, a friend of David Diaz's (and no relation to him), approached Plaintiff and attempted to calm him down or remove him from the party. The three men got into a physical altercation.

**RESPONSE**: Based on Plaintiff's representation, admit.

19. David Diaz was standing near the entrance to the kitchen watching the altercation but was not involved in it. The altercation was to the north of where Diaz was standing and in front of him.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

20. At some point during the fight, someone standing behind and to the south of David Diaz shot him in the back of the head at close range, killing him instantly.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

21. Diaz's body fell face-first to the north into the kitchen, towards where Plaintiff was fighting with the other men.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

22. Everyone in the kitchen panicked and fled the house.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

### The Physical Evidence

23. The evidence recovered from the body and the crime scene demonstrated conclusively that Plaintiff could not have shot David Diaz.

**RESPONSE:** The Answering Defendant denies this allegation and puts Plaintiff to his proof thereon.

24.    The autopsy showed that Diaz was shot from behind, with the bullet entering the back left of his head 1.5 inches below the top, passing in a straight line through his head, and exiting 4 inches lower through the right cheek.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

25.    Defendant Casper, who collected evidence and took measurements at the crime scene following the murder, recovered fragments of the fatal bullet under the stove directly north of the top of Diaz's head, consistent with a shot that was fired into the kitchen from south to north.

**RESPONSE**:  This paragraph contains multiple allegations.  The Answering Defendant admits that Defendant Casper was involved in investigating the murder scene, and that he recovered bullet fragments from under the stove, but lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

26.    The autopsy further established that the bullet severed Diaz's spinal cord, killing him instantly.

**RESPONSE:**  The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

27.    Diaz would have been unable to walk or take a step, and would have most likely fallen straight forward.

**RESPONSE**: This paragraph contains a statement and conclusions, legal or otherwise, to which no response is required; but if response is required the Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

28.     The body fell face-down into the kitchen, further establishing that the shooter fired into the kitchen from behind David Diaz.

**RESPONSE**:  This paragraph contains a statement and conclusion, legal or otherwise to which no response is required; but if response is required the Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

29.     The Medical Examiner concluded that based on the soot and powder deposits surrounding the entrance wound, the shot was fired from approximately 2 to 3 inches away.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

30.     Thus, all of the physical and medical evidence demonstrated that, at the time of the shooting, the killer was standing just behind David Diaz *outside* the kitchen facing into it.

**RESPONSE**:  The Answering Defendant denies each and every allegation in this paragraph, and puts Plaintiff to his proof thereon.

31.     It was and is undisputed that, at the time of the shooting, Plaintiff Wilber was *inside* the kitchen and in front of David Diaz.

**RESPONSE**:  The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

32.     During their investigation, the Defendants knew that Plaintiff could not have shot David Diaz in the manner the physical and medical evidence definitively established that he was shot.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief as to what the officer-defendants knew or believed concerning the physical and medical

evidence in the course of their investigation, and therefore denies the allegations within this paragraph and puts Plaintiff to his proof thereon.

**The Police Investigation and Fabrication of Evidence**

33.     Despite the impossibility based on the physical and medical evidence that Plaintiff Wilber could have been the shooter, the police immediately focused on him as their sole suspect instead of conducting the necessary investigation to solve the homicide and identify David Diaz's actual killer.

**RESPONSE**:  This paragraph contains multiple allegations. The Answering Defendant denies that police "immediately focused on [Plaintiff] as their sole suspect instead of conducting the necessary investigation," and denies that the physical and medical evidence establishes an "impossibility … [that] Plaintiff Wilber could have been the shooter."

34.     Although the evidence revealed multiple other plausible suspects, the Defendants never investigated any of them, instead directing all of their efforts towards pinning the crime on Plaintiff while seeking to discredit the evidence that pointed to other suspects.

**RESPONSE**:  This paragraph contains multiple allegations.  The Answering Defendant denies that the officer-defendants never investigated other suspects; the Answering Defendant lacks knowledge or information that the officer-defendants directed "their efforts towards pinning the crime on Plaintiff," and/or sought to "discredit the evidence that pointed to other suspects," and therefore denies the same and puts Plaintiff to his proof thereon**.**

35.     In order to support their obviously false theory and to frame Plaintiff, the Defendants conspired to coerce and fabricate false witness statements that would implicate Plaintiff as the killer by both inserting incriminating details into the statements and omitting exculpatory ones.

**RESPONSE**: This paragraph contains multiple allegations. The Answering Defendant denies that the officer-defendants developed or supported an "obviously false theory," "framed" Plaintiff, coerced or fabricated false witness statements, inserted incriminating details and/or

omitted exculpatory ones, and/or otherwise violated Plaintiff's constitutional rights, or are liable to him.

36.     The Defendants likewise concealed or withheld from Plaintiff's defense handwritten reports and notes that contained exculpatory information.

**RESPONSE**:  The Answering Defendant denies that the officer-defendants concealed or withheld exculpatory information from Plaintiff and/or his defense.

*Richard Torres' Statement*

37.     On February 1, 2004, Richard Torres, who was wanted for probation violations, turned himself in to the police for questioning related to David Diaz's murder. He was immediately arrested.

**RESPONSE**:  This paragraph contains multiple allegations.  Admit that Richard Torres was in police custody on February 1, 2004, but lack knowledge and information sufficient to form a belief as to the truth of the remaining allegations contained within this paragraph, and therefore deny the same and puts Plaintiff to his proof thereon.

38.     Defendants Olson and Johnson interviewed Torres and, through threats and intimidation, coerced him into providing a false statement incriminating Plaintiff. These Defendants threatened to charge Torres with the murder and made clear that they wanted him to say Plaintiff was the shooter.

**RESPONSE**: This paragraph contains multiple allegations.  Admit that Torres was interviewed by Defendants Olson and Johnson, but lacks knowledge or information sufficient to form a belief that these officer-defendants threatened, intimidated, or coerced him to make statements incriminating Plaintiff, and furthermore lacks knowledge or information sufficient to form a belief as to what was "made clear" to Torres, or what Torres believed "they wanted him to say," and therefore denies the same and puts Plaintiff to his proof thereon.

39.     Defendants Olson and Johnson knowingly fabricated substantial parts of a statement from Torres, including that he saw Plaintiff with a gun in his hand, specifically a silver and black semi-automatic pistol, moments after he heard the gunshot.

**RESPONSE:** The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

40.     In fact, Torres did not see Plaintiff with a gun either before or after the shot was fired.

**RESPONSE:** The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

*Jeranek Diaz's Statement*

41.     Also on February 1, 2004, at around the same time that Defendants Olson and Johnson were interviewing Torres, Defendant Schuler interviewed Jeranek Diaz.

**RESPONSE**:  Admit that Defendant Schuler interviewed Jeranek Diaz on or about February 1, 2004, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

42.     Defendant Schuler fabricated substantial parts of a statement from Jeranek Diaz, including that, seconds before the shooting, Jeranek Diaz saw Plaintiff pull out a silver and black semi-automatic handgun and point it at David Diaz; that Jeranek Diaz then ducked down to avoid being shot; that Jeranek Diaz heard the shot and thought it came from where Plaintiff was standing; and that, after David Diaz's body fell to the ground, Jeranek Diaz saw Plaintiff tuck a gun back into his coat.

**RESPONSE**:  The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

43.     In an attempt to explain how Plaintiff could have shot David Diaz in the back of the head despite Plaintiff's position inside the kitchen and in front of David Diaz at the time of the shooting, Defendant Schuler invented and inserted into Jeranek Diaz's statement the detail that, at the time of the shooting, David Diaz had just turned around and was about to leave the kitchen.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief as to whether Defendant Schuler "invented or inserted" details into Jeranek Diaz's statement, or his motivation if indeed that occurred, and therefore denies the allegations in this paragraph and puts Plaintiff to his proof thereon.

44.     Jeranek Diaz never told the police any of the above information and in fact he never saw Plaintiff or anyone else at the party with a gun.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

45.     Jeranek Diaz never told Defendant Schuler that he saw David Diaz turn to leave the kitchen before the shooting, and in fact David Diaz was looking towards the kitchen when he was shot.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

46.     Defendant Schuler never gave Jeranek Diaz an opportunity to review the typewritten version of his statement.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

47.     Defendant Schuler was taking notes during his interview. Nevertheless, no notes of the interview or handwritten version of Jeranek Diaz's statement were ever produced to the prosecution or to Plaintiff's defense.

**RESPONSE:**  The Answering Defendant lacks knowledge or information sufficient to form a belief as to whether Defendant Schuler was taking notes during the interview of Jeranek Diaz, and therefore denies the same and puts Plaintiff to his proof thereon.  The Answering Defendant

affirmatively denies the existence of any city policy, practice or custom to withhold exculpatory evidence from prosecutors and/or the defense, and denies any inference or suggestion otherwise asserted or implied by this paragraph.

*Antonia West's Statement*

48.    On February 2, 2004, Defendants Johnson and Olson interviewed Plaintiff's sister, Antonia West, who was present in the kitchen at the time of the shooting.

**RESPONSE:**  Admit that Plaintiff's sister, Antonia West, was present at the time of the shooting and that she was interviewed by Defendants Johnson and Olson on or about February 2, 2004.

49.    Later that day, Defendants Duffy and Erwin continued the interview.

**RESPONSE:**  Admit that Ms. West was later interviewed by Defendants Duffy and Erwin.

50.    West had a learning disability that impaired her reading and comprehension abilities, making her particularly vulnerable in high-pressure situations like a police interrogation.

**RESPONSE:**  The Answering Defendant lacks knowledge or information sufficient to form a belief as to a) whether West had or has a learning disability, and b) whether the defendant-officers knew or should have known about her alleged learning disability, and therefore denies these allegations and puts Plaintiff to his proof thereon.   Whether West was "particularly vulnerable … [to] police interrogation" is a conclusion, legal or otherwise, to which no response is required; but if response is required: denied.

51.    West told these Defendants that, immediately after the gunshot, she saw her brother patting himself down to check if he had been shot.

**RESPONSE**:  The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

52.    Despite the exculpatory nature of this evidence, these Defendants omitted any mention of it from their reports.

**RESPONSE**:  The Answering Defendant admits and affirmatively asserts that neither the eight (8) page written statement of Ms. West's first interview with Defendants Johnson and Olson, nor the five (5) page written statement of Ms. West's second interview with Defendants Duffy and Erwin, both of which were contemporaneously signed by her, includes the detail that Ms. West "saw her brother patting himself down, immediately after the gunshot;" because the Answering Defendant lacks knowledge or information sufficient to form a belief as to whether Ms. West ever made such statement, it therefore denies that it was made and/or "omitted" and puts Plaintiff to his proof thereon.

53.     Instead, these Defendants wrote that, at the time of the shot, West ducked her head and when she looked back up, everyone was running out the door and she did not see her brother.

**RESPONSE**:  The Answering Defendant admits that the five (5) page written statement of Ms. West's interview with Defendants Duffy and Erwin recites that: "West stated she ducked, and was scared. She thought for a moment that she may have been shot because she felt something bump her arm. She turned and looked back.  She saw that [Plaintiff] was gone," but lacks knowledge or information sufficient to conclude that these details were included "instead" of others, and therefore denies the same and puts Plaintiff to his proof thereon.

54.     These Defendants never read West's statement back to her, and she signed it without knowing its contents.

**RESPONSE**:  The Answering Defendant affirmatively asserts that Ms. West signed or initialed the five (5) page written statement of her interview with Defendants Duffy and Erwin in at least seven (7) different locations, but lacks knowledge or information sufficient to form a belief as to whether it was read back to her or her knowledge of its contents, and therefore denies these allegations in this paragraph and puts Plaintiff to his proof thereon.

55.     Three times over the course of several days, several MPD Detectives, including Defendants Burgos**,** Caballero, and Corbett, interviewed Oscar Niles, who was present in the kitchen at the time of the shooting.

**RESPONSE**:  The Answering Defendant admits that Niles was present at the shooting, and was interviewed by MPD Detectives in conjunction with their investigation, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in this paragraph, and therefore denies the same and puts Plaintiff to his proof thereon.

56.     During this course of questioning, these Defendants and their fellow detectives pressured and coerced Niles to provide false information that would incriminate Plaintiff.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief that officer-defendants, or unnamed other officers, "pressured and[/or] coerced Niles to provide false information," and therefore denies the same and puts Plaintiff to his proof thereon.

57.     Niles was first interviewed for over four and a half hours on February 4, 2004.

**RESPONSE**: The Answering Defendant admits and affirmatively asserts that Niles participated in a voluntary interview on February 4, 2004, that began shortly after 7 o'clock and ended after 11 o'clock, which included a break, and during which Niles declined a bathroom break and a beverage, and upon its conclusion Niles signed or initialed a seven (7) page written statement of that interview in more than a dozen locations.

58.     After the first interview, Niles was arrested, based on an open warrant for an unrelated matter, and was not permitted to leave the police station. He was held overnight in a holding cell and never provided with food, water, or a shower.

**RESPONSE:**  The Answering Defendant admits that Niles was arrested following the voluntary interview, and held in custody overnight, but lacks knowledge or information sufficient to form a belief as to the remaining allegations contained in this paragraph, and therefore denies the remaining allegations in this paragraph and puts Plaintiff to his proof thereon.

59.     On February 5, Defendant Burgos interrogated Niles from about 2:30 PM until about 4:00 PM.

**RESPONSE**: The Answering Defendant admits that Defendant Burgos interviewed Niles on February 5, 2004.

60.     Defendant Burgos told Niles that he was "not telling us what we need to hear" and returned Niles to the holding cell.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief about whether Defendant Burgos made such statement, and therefore denies the allegations of this paragraph and puts Plaintiff to his proof thereon.

61.     Roughly five hours later, beginning at about 9:00 PM, Defendants Caballero and Corbett questioned Niles.

**RESPONSE**:  Admit that Defendants Caballero and Corbett questioned Niles from around nine o'clock to around 1:30 a.m. on February 5, 2004.

62.     The interview concluded at around l:35 AM on February 6, over 24 hours after Niles arrived at the police station. In all that time, he was never provided with any food.

**RESPONSE**: The Answering Defendant admits and affirmatively asserts that Niles was provided with a bathroom break, offered water, coffee and soda, which he declined, and did not request food during this interview; because the Answering Defendant lacks knowledge or information sufficient to form a belief as to whether Niles was offered or provided with food at other times while in custody, it denies the remaining allegations in this paragraph and puts Plaintiff to his proof thereon.

63.     Throughout the many hours of the three separate interrogations, the detectives, including Defendants Burgos, Caballero, and Corbett, made it clear that they wanted Niles to provide information that would implicate Plaintiff as the shooter.

**RESPONSE**: The Answering Defendant admits that Niles was interviewed three times, and signed three written statements attesting that they were true and correct, but lacks knowledge or

information as to what Niles believed was "made clear" to him, and therefore denies any inference, suggestion, or implication that the officer-defendants improperly coerced, influenced or caused Niles to make false statements and/or to implicate Plaintiff, and puts Plaintiff to his proof thereon.

64.    They fed Niles information that they wanted him to repeat back to them, including that he heard the gunshot come from the area of the fight.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to conclude which officer-defendants or other unnamed detectives Plaintiff means by "they," and therefore denies the allegations in this paragraph, and puts Plaintiff to his proof thereon.

65.    Niles eventually agreed to sign a materially false statement because he was exhausted and wanted to go home.

**RESPONSE**: The Answering Defendant admits and affirmatively asserts that Niles signed a seven (7) page written statement, attesting that it was true and correct, following his first interview, and signed a four (4) page written statement following his second interview, and signed a three (3) page written statement following the third interview, but lacks knowledge or information as to Niles' state of mind or rationale when he signed, and therefore denies the remaining allegations in this paragraph, including that any of these statements was "materially false," and puts Plaintiff to his proof thereon.

66.    Niles believed that if he did not do so, the detectives, including Defendants Burgos, Caballero, and Corbett, would have continued harassing him.

**RESPONSE:** The Answering Defendant lacks knowledge or information as to what Niles believed, but denies that officer-defendants "harassed" or mistreated, coerced, influenced or caused Niles to make these contemporaneously attested-to, truthful statements.

67.    One of the detectives threatened to "mess with [him] for the rest of [his] life" if he refused to play along.

**RESPONSE**: The Answering Defendant lacks knowledge or information as to who allegedly made this statement, or whether such statement was made at all, and therefore denies the same and puts Plaintiff to his proof thereon.

68.     Defendant Caballero knowingly produced a statement that contained false inculpatory information, including that Niles heard the gunshot come "from the tussle area" and that, after the shot, he saw "everybody running away from [the Plaintiff] Slim."

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies each and every allegation contained in this paragraph and puts Plaintiff to his proof thereon.

69.     In fact, Niles did not know where the gunshot came from, and he did not tell the police that people were running "away from Slim," merely that they were running out of the kitchen and towards the living room.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted in this paragraph, and therefore denies each and every allegation contained in this paragraph and puts Plaintiff to his proof thereon.

70.     Further, both Defendants Caballero and Burgos omitted exculpatory details from their reports, including that Niles reported that, after the gunshot, Plaintiff "checked himself ' to see if he had been shot.

**RESPONSE**: The Answering Defendant admits and affirmatively asserts that the detail that "Plaintiff 'checked himself' to see if he had been shot" does not appear in any of the three written statements, contemporaneously reviewed and signed by Mr. Niles as true and correct, prepared in 2005; because the Answering Defendant lacks knowledge or information sufficient to form a belief as to whether Mr. Niles ever made the statement alleged in this paragraph, it therefore denies that it was made and/or "omitted" and puts Plaintiff to his proof thereon. To the extent this paragraph implies additional, unspecified exculpatory omissions by Defendant

Caballero and/or Burgos, the Answering Defendant lacks knowledge about what is alleged and therefore denies and puts Plaintiff to his proof thereon.

*The Scene Diagram*

71.     In addition to the fabricated witness statements, at some point in the investigation Defendant Casper falsified a scene diagram with erroneous measurements in an attempt to make the state's theory that Plaintiff was the shooter more plausible.

**RESPONSE**:  This paragraph contains multiple allegations.  The Answering Defendant lacks knowledge or information that witness statements were "fabricated," or that the scene diagram was "falsified," or included "erroneous measurements," and therefore denies the same, as well as that this was done "to make the state's theory … more plausible," and puts Plaintiff to his proof thereon.

72.     While at the crime scene on the night of the murder, Defendant Casper took measurements of the kitchen and the location of David Diaz's body.

**RESPONSE**:  The Answering Defendant admits and affirmatively asserts that on February 1, 2004, Defendant Casper dictated a report of his observations of the murder scene in the early morning hours of January 31, 2004, including details about the victim's location and other information relevant to the on-going investigation.

73.     According to Defendant Casper's computer-generated scene diagram, Diaz's head was 6' l" from the north wall of the kitchen, his right foot was 3' l " from the doorway leading into the living room, and his left foot was 3'6" from the doorway.

**RESPONSE**: The Answering Defendant lacks knowledge or information as to what Plaintiff is alleging in this paragraph, insomuch as the computer-generated scene diagram indicates in the legend in the bottom-right hand corner, "Not To Scale," and therefore denies the scene diagram shows or purports to show what is alleged in this paragraph and puts Plaintiff to his proof thereon.

74. Defendant Casper falsified the distance from Diaz's feet to the doorway in an attempt to create evidence to support the Defendants' false theory that Plaintiff had shot David Diaz.

**RESPONSE**: The Answering Defendant lacks knowledge or information sufficient to form a belief as to when or how Plaintiff alleges that Defendant Casper, who is deceased, falsified distances, and further lacks knowledge or information concerning Defendant Casper's state of mind if and when this allegedly occurred, and therefore denies each and every allegation contained in this paragraph and puts Plaintiff to his proof thereon.

75. Defendant Casper withheld from the prosecution and Plaintiff's defense his notes of his measurements at the crime scene, which contained exculpatory and impeaching information.

**RESPONSE:** This paragraph contains multiple allegations. The Answering Defendant lacks knowledge or information as to whether Defendant Casper prepared written notes, and therefore denies that written notes existed, and furthermore denies that Defendant Casper withheld exculpatory or impeaching information, as well as any implication, inference or suggestion that the City of Milwaukee had or has a custom, policy or practice of withholding exculpatory or impeaching information, and puts Plaintiff to his proof thereon.

### The Trial and Wrongful Conviction

76. Despite his innocence, on February 20, 2004 Plaintiff was arrested and charged with first-degree intentional homicide with a dangerous weapon.

**RESPONSE**: Admits that Plaintiff was arrested and charged with first-degree intentional homicide with a dangerous weapon on or about February 20, 2004, but denies the remainder of this paragraph.

77. Because the Defendants' false theory that Plaintiff was the killer was wholly contradicted by the physical and medical evidence, the prosecution's case at trial relied almost entirely on the Defendants' fabricated witness statements.

**RESPONSE:** This paragraph contains multiple allegations. The Answering Defendant denies that the physical and medical evidence "wholly contradicted" the officer-defendants' theory that Plaintiff was the killer, and denies that this theory was "false" or that witness statements were "fabricated," and lacks knowledge or information sufficient to form a belief as to the remaining allegations, and therefore denies the same and puts Plaintiff to his proof thereon.

78.    The prosecutor introduced the fabricated statements and scene diagram into evidence, used the statements for purposes of impeachment, and referenced them heavily throughout both his opening and closing arguments.

**RESPONSE:** This paragraph contains multiple allegations. The Answering Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in this paragraph, and therefore denies each and every allegation contained in this paragraph and puts Plaintiff to his proof thereon.

79.    The prosecution called to the stand multiple detectives, including several of the Defendants, to read their false reports into the record. In furtherance of their conspiracy to frame Plaintiff, the Defendants falsely testified that their reports were true and accurate.

**RESPONSE**:  This paragraph contains multiple allegations.  The Answering Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in this paragraph, and therefore denies each and every allegation in this paragraph and puts Plaintiff to his proof thereon.

80.    Richard Torres testified consistent with his false, fabricated statement, but he has since recanted. He was the only witness who testified that he saw Plaintiff with a gun the night of the murder.

**RESPONSE**:  The Answering Defendant admits that Richard Torres testified at trial, consistent with his prior statements, that he saw Plaintiff with a gun the night of the murder, but lacks knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph, and therefore denies each, and puts Plaintiff to his proof thereon.

81.     As a proximate result of the above-described wrongful conduct on the part of the Defendants, and on the basis of the false evidence that they fabricated, the jury convicted Plaintiff of the murder, and he was sentenced to life in prison.

**RESPONSE:** The Answering Defendant admits that Plaintiff was convicted of murder by the jury who heard the evidence, and was sentenced to life in prison, but denies that the officer-defendants engaged in "wrongful conduct," or "fabricated," or presented "false evidence," and/or any inference, suggestion or assertion that Defendants violated Plaintiff's constitutional rights, or are liable to him.

82.     Plaintiff spent nearly 18 years in prison for a crime he did not commit before a federal court vacated his conviction. He was released on bond pending a possible retrial, and the Milwaukee County District Attorney's Office eventually formally dismissed his case on May 27, 2022.

**RESPONSE**: The Answering Defendant admits and affirmatively asserts that Plaintiff was sentenced to prison after being found guilty at trial, and that the Milwaukee County District Attorney's Office declined to re-prosecute after his conviction was subsequently vacated, but lacks knowledge or information sufficient to form a belief as to the remaining allegations in this paragraph, and therefore denies each and puts Plaintiff to his proof thereon.

### The Defendants' Misconduct was Committed in Furtherance of a Conspiracy

83.     All of the Defendants, acting jointly and with other MPD police investigative, supervisory, and command personnel, as well as other unknown co-conspirators, together reached an understanding, engaged in an ongoing course of conduct and joint action, and otherwise conspired and continue to conspire among and between themselves to deprive Plaintiff of his constitutional rights.

**RESPONSE**: This paragraph contains multiple allegations. The Answering Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in this paragraph, and therefore denies each and every allegation contained in this paragraph puts Plaintiff to his proof thereon.

84.     This conspiracy is evidenced, *inter alia*, by the overt acts set forth above and below, including, but not limited to, fabricating inculpatory evidence, suppressing exculpatory evidence, and discrediting and failing to investigate alternative suspects. By and through these overt acts, each Defendant, jointly and in conspiracy, with a shared understanding, intent, and/or meeting of the minds, deprived, and continues to deprive, Plaintiff of his constitutional rights.

**RESPONSE**: This paragraph contains multiple allegations.  The Answering Defendant lacks knowledge or information sufficient to form a belief as to the allegations contained in this paragraph, and therefore denies each and every allegation in this paragraph and puts Plaintiff to his proof thereon.

### Policies and Practices

85.     The constitutional violations that caused Plaintiff's wrongful conviction were the result of the City of Milwaukee's policies and practices of, *inter alia*, pursuing wrongful convictions through reliance on materially flawed investigations and coerced and fabricated evidence including witness statements; failing to produce to criminal defendants exculpatory material including handwritten notes of interviews and other investigative activities; failing to properly investigate or seeking to discredit alternative suspects; failing to adequately train, supervise, monitor, and discipline Milwaukee police officers; and maintaining the police code of silence.

**RESPONSE:** This paragraph contains multiple allegations. The Answering Defendant denies any policy, custom or practice of the City of Milwaukee to violate suspects' constitutional rights in any of the ways alleged in this paragraph, and puts Plaintiff to his proof thereon.

86.     The practices described above and below were consciously approved at the highest policy-making level for decisions involving the Milwaukee Police Department (MPD) and proximately caused Plaintiff's injuries.

**RESPONSE**:  The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

87.     Consistent with the municipal policies and practices described above and below, Defendants in this case fabricated witness statements, both by inserting false incriminatory details and by omitting exculpatory details, and also failed to investigate and attempted to discredit alternative suspects. In addition, the Defendants presented their fabricated statements as evidence at Plaintiff's criminal trial.

**RESPONSE**: This paragraph contains multiple allegations. The Answering Defendant denies that the officer-defendants violated Plaintiff's constitutional rights in any of the ways alleged in this paragraph, and further denies that the conduct alleged was or is "consistent with" municipal policy, custom or practice.

88.     The Defendants' coercion of false statements from witnesses was also undertaken pursuant to, and proximately caused by, a policy and practice on the part of the MPD of using coercive interrogation tactics in order to elicit false statements from witnesses in criminal cases, which has caused numerous wrongful convictions.

**RESPONSE**:  This paragraph contains multiple allegations. The Answering Defendant denies that the officer-defendants coerced "false statements" from witnesses, or used coercive interrogation tactics "to elicit false statements from witnesses," and further denies that such conduct was or is "consistent with" municipal policy, custom or practice.

89.     Also consistent with the municipal policies and practices described above and below, Defendants in this case concealed exculpatory evidence in files and records which were never disclosed to Plaintiff's criminal defense attorneys.

**RESPONSE**: This paragraph contains multiple allegations.  The Answering Defendant denies that the officer-defendants concealed or withheld exculpatory evidence, and further denies that withholding or concealing exculpatory evidence was or is "consistent with" municipal policy, custom or practice.

90.     The wrongful convictions of innocent persons based on coerced and fabricated evidence including witness statements include numerous cases in which MPD detectives used similar tactics to those employed by the Defendants against Plaintiff in this case. These tactics include: (a) psychological intimidation, manipulation, and physical deprivation; (b) fabrication of evidence; (c) concealment of exculpatory information; (d) failing to investigate and discrediting alternative suspects; (f) false testimony; and (g) other unlawful tactics to secure the arrest, prosecution, conviction, and imprisonment of innocent persons.

 **RESPONSE**:  This paragraph contains multiple allegations. The Answering Defendant denies the existence of any city policy, custom or practice to obtain "wrongful convictions of innocent persons," and denies the existence of any city policy, custom or practice to coerce and/or

fabricate evidence or witness statements, and further denies that these alleged "tactics" were employed in this case, or that Defendants violated Plaintiff's constitutional rights, or are liable to him.

91.     Cases in which Milwaukee police officers used similar tactics to secure wrongful convictions include, inter alia, the wrongful convictions of William Avery and Chaunte Ott.

**RESPONSE**: The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

92.     As a matter of both policy and practice, municipal policymakers and MPD supervisors condoned and facilitated a code of silence within the Milwaukee Police Department.

**RESPONSE**: The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

93.     In accordance with this code, MPD officers, including, but not limited to, the Defendants, refused to report and otherwise lied and committed perjury about misconduct committed by their colleagues, including the misconduct at issue in this case.

**RESPONSE:** The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

94.     As a result of the City of Milwaukee's established practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct; failing to investigate cases in which the police are implicated in obtaining coerced and false witness statements, as well as wrongful charges and convictions; failing to discipline officers accused of this unlawful conduct; and facilitating a code of silence within the Department, MPD officers, including the Defendants named herein, have come to believe that they may violate the constitutional rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences.

**RESPONSE:** This paragraph contains multiple allegations. The Answering Defendant lacks knowledge or information sufficient to form a belief as to what the officer-defendants believe or believed, and therefore denies this allegation, as well as each and every other allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

95.     The City's failure to train, supervise, monitor, and discipline its officers effectively condones, ratifies, and sanctions the kind of misconduct that the Defendants committed against Plaintiff in this case. Constitutional violations such as occurred in this case are encouraged and facilitated as a result of the City's practices, customs, and *de facto* policies, as alleged above, and these policies, practices, and customs were implemented with deliberate indifference and were a moving force behind these violations.

**RESPONSE:**  This paragraph contains multiple allegations. The Answering Defendant denies the existence of any City policy, practice or custom that "condones, ratifies [or] sanctions" the constitutional misconduct alleged, and each and every other allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

96.     The City of Milwaukee and officials within the Milwaukee Police Department failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the patterns of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken to remedy Plaintiff's ongoing injuries.

**RESPONSE:** This paragraph contains multiple allegations. The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

## Damages

97.     As a direct result of Defendants' intentional, bad faith, willful, wanton, reckless, and/or deliberately indifferent acts, and omissions, Plaintiff sustained injuries and damages, including loss of his freedom for almost 18 years, loss of his youth, personal injuries, pain and suffering, severe mental anguish, and emotional distress. In addition, he also sustained further injuries and damages, including inadequate medical care, humiliation, indignities, embarrassment, degradation, permanent loss of natural psychological development, and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and freedom of speech and expression, for which he is entitled to monetary relief.

**RESPONSE**:  This paragraph contains multiple allegations. The Answering Defendant lacks knowledge or information sufficient to form a belief as to the truth of the matters asserted, and therefore denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

## COUNT I - 42 U.S.C. § 1983
## Fourteenth Amendment -Violation of Due Process

98.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE:** The Answering Defendant re-alleges and incorporates herein by reference as though fully set forth herein, Defendant's answers to the preceding paragraphs of the Plaintiff's complaint.

99.     As described more fully above, all of the individual Defendants named in this complaint while acting individually, jointly, and/or in concert and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to due process.

**RESPONSE**:  The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

100.     In the manner described more fully above, the Defendants, individually, jointly, and/or in concert and in conspiracy, caused and/or continued Plaintiff's wrongful charging, prosecution, conviction, and imprisonment by committing or causing to be committed one or more of the following acts: coercing, constructing, and fabricating the false and totally unreliable witness statements, reports, and diagrams as described above, which formed the basis for Plaintiff s charging, prosecution, and conviction; withholding from the prosecutors, judges, and defense attorneys involved in Plaintiff s prosecution the fact that these statements and reports were false, unreliable, fabricated, and coerced; suppressing, withholding, destroying additional exculpatory and impeachment evidence; and failing to investigate, and attempting to discredit, alternative suspects.

**RESPONSE**:  The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

101.     Absent Defendants' misconduct, the prosecution of Plaintiff could not and would not have been pursued, and Plaintiff would not have been jailed, convicted, imprisoned, and otherwise deprived of liberty.

**RESPONSE:**  The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

102.     The Defendants' misconduct directly and proximately caused the unjust and wrongful pre-trial detention, criminal conviction, wrongful imprisonment, and deprivation of liberty of Plaintiff, thereby denying him his constitutional right to fair hearings and a fair trial, in

violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**RESPONSE**:  The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

103.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

**RESPONSE**: The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

104.     As a direct and proximate result of this violation of his constitutional right to due process, Plaintiff suffered injuries and damages as set forth above, including but not limited to loss of liberty, physical injury, and emotional distress.

**RESPONSE**: The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

**COUNT II - 42 U.S.C. § 1983**
**Fourteenth Amendment -Failure to Intervene**

105.     Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE:**  The Answering Defendant re-alleges and incorporates herein by reference as though fully set forth herein, Defendant's answers to the preceding paragraphs of the Plaintiff's complaint.

106.     The individual Defendants named in this complaint were aware of the constitutional violations as set forth above and had the opportunity and duty to intervene and prevent the violation of Plaintiff's constitutional rights, but they failed to do so.

**RESPONSE**:  This paragraph contains multiple allegations.  Whether individual defendants had a "duty" is a legal conclusion, which requires no response.  The Answering Defendant lacks knowledge or information sufficient to form a belief as to what individual Defendants were

"aware of," or had an opportunity to prevent, and therefore denies the allegations in this paragraph, and puts Plaintiff to his proof thereon.

107. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and willful indifference to Plaintiff's clearly established constitutional rights.

**RESPONSE**: The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

108. As a direct and proximate result of these Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries as set forth above, including but not limited to loss of liberty, physical harm, and emotional distress.

**RESPONSE**: This paragraph contains multiple allegations. The Answering Defendant lacks knowledge or information sufficient to form a belief as to Plaintiff's alleged injuries, and therefore denies the same, along with each and every other allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

### COUNT III - 42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights

109. Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE:** The Answering Defendant re-alleges and incorporates herein by reference as though fully set forth herein, Defendant's answers to the preceding paragraphs of the Plaintiff's complaint.

110. The individual Defendants named in this complaint reached an agreement between and amongst themselves and other unnamed co-conspirators to frame Plaintiff for the murder of David Diaz and to thereby deprive him of his constitutional rights.

**RESPONSE**: The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

111. Before and after Plaintiff's conviction, each of the individual Defendants further conspired, and continues to conspire, to deprive Plaintiff of exculpatory materials to which he

was lawfully entitled and which would have led to the more timely reversal of his wrongful conviction and his exoneration of the false charges.

**RESPONSE**: The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

112.    In this manner, the individual Defendants named in this complaint, acting in concert with other unknown co-conspirators, including other MPD officers, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

**RESPONSE**: The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

113.    In furtherance of the conspiracy, each of the co-conspirators committed one or more overt acts including, but not limited to, those set forth in the facts above, and was an otherwise willful participant in joint activity.

**RESPONSE**: The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

114.    The individual Defendants' misconduct was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

**RESPONSE**: The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

115.    As a direct and proximate result of the illicit prior agreement, conspiracy, and joint action referenced above, Plaintiff s rights were violated and he suffered the damages and injuries as previously set forth.

**RESPONSE**: The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

## COUNT IV - 42 U.S.C. § 1983
### *Monell* Policies and Practices

116.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE:** The Answering Defendant re-alleges and incorporates herein by reference as though fully set forth herein, Defendant's answers to the preceding paragraphs of the Plaintiff's complaint.

117.    The actions of all the individual Defendant Officers were undertaken pursuant to policies, practices, and customs of the Milwaukee Police Department, described above, which were approved, encouraged, and/or ratified by policymakers for the City of Milwaukee with final policy making authority for the actions and omissions alleged above.

**RESPONSE**: The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

118.    These policies, practices, and customs, as set forth in greater detail above, included the failure to adequately train, supervise, monitor, and discipline MPD officers who engaged in the constitutional violations, the pursuit of wrongful convictions through reliance on materially flawed investigations, coerced and fabricated evidence including witness statements, the suppression of exculpatory evidence, and the police code of silence.

**RESPONSE**: The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

119.    One or more of the policies, practices, and customs described in this Count and in the facts above were maintained and implemented by the City of Milwaukee with deliberate indifference to Plaintiff's constitutional rights and were a moving force behind the violations of those rights.

**RESPONSE:** The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

120.    As a direct and proximate result of the City's actions and inactions, Plaintiff's constitutional rights were violated, and he suffered injuries and damages, as set forth above.

**RESPONSE**: The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

## COUNT V - Indemnification

121.    Each paragraph of this Complaint is incorporated as if restated fully herein.

**RESPONSE:** The Answering Defendant re-alleges and incorporates herein by reference as though fully set forth herein, Defendant's answers to the preceding paragraphs of the Plaintiff's complaint.

122.    In Wisconsin, pursuant to Wis. Stat. § 895.46, public entities must pay any tort judgment for damages for which employees are liable for acts within the scope of their employment.

**RESPONSE**: This paragraph contains a statement and conclusion, legal or otherwise, to which no response is required.

123.    At all times relevant to this action, Defendants Casper, Schuler, Olson, Johnson, Duffy, Erwin, Burgos, Caballero, and Corbett committed the acts alleged above in the scope of their employment with Defendant City of Milwaukee. Therefore, Defendant City of Milwaukee is liable as their employer for any resulting damages or award of attorney's fees.

**RESPONSE**: This paragraph contains multiple allegations. The Answering Defendant denies each and every allegation contained within this paragraph, and puts Plaintiff to his proof thereon.

## AFFIRMATIVE DEFENSES

AS AND FOR AFFIRMATIVE DEFENSES, defendants City of Milwaukee, alleges and states to the Court as follows:

1.      plaintiff's complaint fails to state a claim upon which relief can be granted;

2.      any City of Milwaukee police officers, supervisors, or officials acted in good faith, without malice, and pursuant to their duties as law enforcement officers, and are therefore immune from liability to the plaintiff, pursuant to the doctrine of qualified immunity;

3.      the actions of any City of Milwaukee employees or agents were discretionary or quasi-judicial or quasi-legislative in nature, and are therefore immune from liability regarding any state-law claims, pursuant to Wis. Stat. § 893.80;

4.      the amount of liability of the City of Milwaukee, if any, relative to any state-law claim, is limited pursuant to Wis. Stat § 893.80;

5.      the plaintiff failed to file the appropriate notice/claim document(s), and consistent with Wis. Stat. § 893.80, any state-law claims are therefore barred;

6.      plaintiff's causes of action as against deceased individuals may be abated under Wisconsin law; and

7.      to the extent that Plaintiff sustained the injuries and damages he alleges, any such injuries and damages were caused by his actions or failure to act and/or by the actions or inaction of others not named as parties in this suit.

WHEREFORE, defendant City of Milwaukee demands judgment as follows:

1.      Dismissing the complaint of the plaintiff as against them on its merits, together with costs and disbursements; and

2.      For such other and further relief as the Court may deem just and equitable.

### JURY DEMAND

Defendant City of Milwaukee demand a trial by jury of all issues so triable.

Dated at Milwaukee, Wisconsin this 10th day of August, 2023.

TEARMAN SPENCER
City Attorney

s/Jennifer L. Williams
JENNIFER L. WILLIAMS
State Bar No. 1058087
Deputy City Attorney

s/Clint B. Muche
CLINT B. MUCHE
State Bar No. 1131629
Assistant City Attorney
*Attorneys for the City of Milwaukee*

**ADDRESS:**
200 E. Wells Street, Suite 800
Milwaukee, WI 53202
(414) 286-2601 – Telephone
(414) 286-8550 – Facsimile
Email:  jewill@milwaukee.gov
        cbmuche@milwaukee.gov                          1032-2023-1229/286481