UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| DANNY WILBER, | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 23-cv-951 |
| v. | ) | Hon. Judge J.P. Stadtmueller |
| CITY OF MILWAUKEE, et al., | ) | |
| Defendants. | ) | |

### DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR A SHORT EXTENSION OF THE TRIAL DATE AND PRETRIAL DEADLINES

The above-captioned Defendants, through their counsel Nathan & Kamionski LLP, respectfully move for a 30-day extension of all scheduled pretrial dates and the February 3, 2025, trial date, and in support, state as follows:

1. Plaintiff filed this civil rights lawsuit against nine Milwaukee Police Department detectives and the City of Milwaukee ("City"), alleging various 42 U.S.C. §1983 claims of violation of due process under the Fourteenth Amendment, failure to intervene under the Fourteenth Amendment, conspiracy to deprive Plaintiff of his constitutional rights, and a *Monell* policy and practice claim against the City. (*See* Dkt. 1, *passim*.) Prior to December of 2024, the City was handling defense of this lawsuit through its own law department attorneys.

2. Former lead counsel for Defendants, Deputy City Attorney Jennifer Williams, left the City in late November and withdrew from the case on December 4, 2024, two days before the December 6, 2024, due date for Defendants' summary judgment motion. (*See* Dkts. 49 & 53.) The City retained outside counsel Nathan & Kamionski LLP after Ms. Williams' departure and, on December 5, 2024, filed a motion to extend the summary judgment deadline. The Court denied the City's motion that same day, and *sua sponte* issued a scheduling order setting various pretrial

submission dates, a final pretrial conference date and a trial date of February 3, 2025, without requesting any input from the parties.

3. On December 6, 2024, the owners of Nathan & Kamionski LLP, Shneur Nathan and Avi Kamionski, filed their appearances and Defendants' summary judgment motion, joint and disputed statements of fact, a motion to bar and exclude two witnesses at trial, and proposed jury instructions. Defendants were able to meet the original, un-extended deadline by adopting Plaintiff's undisputed statement of facts.[1]

4. On December 10, the Court issued an order denying both Defendants' motion to exclude the witnesses and Defendants' motion for summary judgment for failure to follow pre-filing protocols, acknowledging that prior counsel's withdrawal made timely compliance with those protocols impossible. (Dkt. 64, p. 5)

5. On December 19, 2024, Defendants filed a motion to extend the February 3, 2025, trial by 90 days due to Mr. Nathan's previously scheduled trial commitments that conflicted directly with the pretrial and trial dates in this case. (*See* Dkt. 68.) Plaintiff responded to that motion on December 23, 2024, claiming that "Defendants' extension request appears to be based on their desire to gain a strategic advantage and delay the proceedings, rather than a genuine inability to comply with this Court's deadlines." (*See* Dkt. 70, p. 3.)[2] Over the holiday break, the Court denied Defendants' motion to extend in a text entry with no opinion attached. (*See* 12-26-24 "Text Only Order"). Mr. Nathan had no choice but to step back from leading this current matter to trial.

---

[1] While attorneys Nathan and Kamionski both have appearances on file, they cannot participate in pretrial matters or try this case on its current schedule, as they are lead counsel for the upcoming trials in Chicago noted in Defendants' 12/19/24 motion to extend trial date. (*See* Dkt. 68.)

[2] Defendants cannot help but remark on the irony of Plaintiff accusing Defendants of trying to gain a strategic advantage, when it is Plaintiff who gains an enormous advantage over Defendants if new defense counsel is not given a reasonable amount of time to prepare for trial.

6. Accordingly, Nathan & Kamionski LLP was forced to assign new lead trial counsel, Brian Wilson and Kathryn Doi, to take over this matter. Since then, Mr. Wilson and Ms. Doi have been attempting to review all documents in the case necessary to prepare adequately for pretrial submissions and for trial. (*See* Decl. of Brian Wilson, attached as <u>Exhibit A</u>, and Decl. of Kathryn Doi, attached as <u>Exhibit B</u>.) Defendants now respectfully request a brief 30-day extension to allow new lead counsel adequate time to familiarize themselves with the case, make contact with their clients, digest the voluminous record, comply with this Court's strict timeline for pretrial procedures – including evaluating the file for witnesses and exhibits, and submitting motions *in limine* with multiple meet-and-confer obligations – and to ultimately present this case for trial.

7. The Court is aware of its pretrial procedures, so Defendants do not restate them. Needless to say, they are labor-intensive and require multiple meetings with opposing counsel, as they are designed to ensure the "orderly preparation of the case for trial…." (Dkt. 54, p.2.) But if those procedures are to reap their intended benefit, a thorough understanding of all the matters to be discussed with Plaintiff's counsel is first needed. For instance, meet-and-confers will be ineffective if the parties share and vet their evidence, arguments, jury instructions, etc., while one side is still in the process of assessing the case and developing their positions.

8. To compound this compressed schedule, counsel for Defendants cannot confirm at this time if they even have the full record in their possession. As their review of the file has progressed, it appears that at least two deposition transcripts are missing from counsel's materials, as well as documents cited by Plaintiff in their Rule 26(a) disclosures.

9. Plaintiff has sued nine individual defendants, and *not* all for the same claims – some are accused of coercing a witness, some are accused of fabricating witness statements, and one (who is deceased) is accused of lying about crime scene measurements. In evaluating the case for

preparation of potential witnesses at trial, to Defendants' counsel's current knowledge, at least sixteen people were deposed, but counsel is aware of at least two deposition transcripts that are not in Defendants' file. (*See* Exh. B, ¶¶ 4-6). Plaintiff has disclosed four experts (the expert record includes, *inter alia*, a dense 26-page single-spaced report and a shooting animation based on 57 pages of supporting documents). (*Id.*) And Plaintiff is pursuing a *Monell* claim, which expands the case beyond the prosecution of Plaintiff or the actions of the individual Defendants, with an additional 12 witnesses named and even more documents in support listed in Plaintiff's supplemental Rule 26(a) disclosures.

10. In terms of documents to review for purposes of exhibits for trial, the list is extremely long. The underlying criminal trial lasted eight days, involved 17 witnesses and almost 2,000 pages of transcripts. (*Id.*) Former counsel for Defendants produced over 4,700 pages in discovery which are being reviewed, and current defense counsel have recently requested all documents listed by Plaintiff in his Rule 26(a) disclosures. (*Id.*) Two large production sets in the file that were tendered via subpoena by the Milwaukee County District Attorney's Office and the Department of Corrections also need to be examined.

11. Current counsel for Defendants is obligated to conduct their own review of this record to be ready for trial, yet there is not enough time to reasonably do so, particularly given the last-minute deposition of key eyewitness Richard Torres on January 3, 2025, which took up almost the entire day with travel included, and required significant preparation time in the days before. Pretrial motions – including complicated Daubert motions – are due in less than two weeks. Backing up from that date, current defense counsel would need to have their motion arguments finalized imminently in order to adequately participate in the meet-and-confer and drafting time still available, but that is not feasible with the amount of information left to review.

12. On top of all of this, Mr. Wilson and Ms. Doi both have other unavoidable work and professional commitments in the next two weeks of January impacting the precious time left to comply with the current schedule and this Court's requirements. (*See* Exhs. A and B.) This can hardly be held against Defendants, because given how the timing of Ms. Williams's withdrawal unfolded, it is unrealistic to expect Defendants to have found new lead trial attorneys skilled in this discrete area of the law who had no other active matters in January and February 2025.

13. Last week, defense counsel asked Plaintiff's counsel if there is *any* length of extension that they would agree to. The answer was no, which is unsurprising given Plaintiff can only benefit if Defendants have inadequate time to prepare for trial. Defendants expect Plaintiff will oppose this motion on the same grounds as stated previously in his Response to Defendants' Motion to Extend the trial date. (*See* Dkt. 70.) But those grounds are specious.

14. First, the fact that Mr. Nathan filed summary judgment on behalf of Defendants does not mean currently assigned trial counsel is fully abreast of the record and has their legal arguments finalized. Defendants' summary judgment arguments were based largely on legal points that only required portions of the record as support (primarily the criminal trial transcripts). (*See, e.g.*, Dkt. 59, pp 6-7 (arguing that Richard Torres' affidavit was inadmissible hearsay, which rested on legal arguments surrounding that one document).) Preparing this case for trial is vastly different than moving for summary judgment, the latter not involving moving pieces like witness contact and preparation, pretrial motion evaluation, pretrial witness and exhibit submissions, expert witness analysis, or other matters that are likely to arise at trial. Moreover, neither Ms. Doi nor Mr. Wilson were involved in Defendants moving for summary judgment. (*See* Exhs. A and B.)

15. Second, Plaintiff's flippant argument that Nathan & Kamionski LLP could easily turn this trial over to someone else within the firm ignores the obvious obstacles to switching

5

counsel at this juncture (hence this motion). Each attorney has their own caseload. The number of experienced attorneys available to appear as lead counsel on a substantive civil rights trial with nine individual defendants and a *Monell* claim is very limited, and moreover, digesting a file of this size in a matter of a couple weeks is a Herculean task for even the most experienced of attorneys. This difficulty is enhanced by the fact that current defense counsel do not appear to have the complete file at hand, nor have they been able to make contact with all of their clients.

16. Perhaps most importantly, there is <u>no conceivable prejudice</u> from a short extension. Only one witness has been subpoenaed for trial (Richard Torres), and he is reachable given that the parties just took his deposition last Friday. The December 5, 2024, scheduling order is the first pretrial and trial schedule the Court has set, it has only been on the calendar for 30 days, and it was set *sua sponte* the day after prior lead defense counsel withdrew. There have also been zero prior continuances of pretrial motion or order dates, or trial dates.

17. Current lead defense counsel has been working extremely hard to familiarize themselves with the case and the voluminous file, but simply cannot do this properly without more time to also address their other previously-scheduled obligations. As this Court is aware, "adequate preparation is the hallmark of an effective advocate." (Dkt. 54, p.8.) Defense counsel would not be acting in their clients' best interests if they did not ask for an adequate amount of time to ensure they have a complete case file, and to review that file, before submitting their pretrial motions and witness/exhibit lists. Nor would the parties be using the Court's time efficiently with only a partial understanding of the witnesses, documents and claims asserted in this case.

18. Finally, it must be noted that Plaintiff has opposed every discovery and/or pretrial request made by current counsel to date, and it is expected that there will be motion practice on certain witnesses and exhibits prior to trial which will add to the already mighty burden to prepare

pretrial submissions. This is a significant high-exposure matter with the hypothetical potential for a multimillion-dollar judgment against the City of Milwaukee and the individual defendants at trial. Thus, there is a significant public interest at stake, and nothing to be gained by forcing Defendants to trial with inadequate time to prepare, particularly where there is no prejudice to Plaintiff in extending the date of pretrial submissions and trial for such a brief time.

19. Given all of this, Defendants respectfully request that the Court continue the trial for 30 days and extend the pretrial deadlines in accordance with the trial date. *See Ruark v. Union Pacific R.R. Co.*, 916 F.3d 619, 631 (7th Cir. 2019) (courts have wide discretion to grant continuances); *see also U.S. v. Dyer*, 2016 WL 7027177, at *3 (E.D. Wis. Dec. 1, 2016) (Stadtmueller, J.) ("Court pushed back the trial date in this case from September 12, 2016, to December 5, 2016"); *U.S. v. Miranda*, 2009 WL 1732330, at *1 (W.D. Wis. June 18, 2009) (granting extension because "of counsel's representations that the defense would be prejudiced if the court did not grant a two-month extension").

Respectfully submitted,

By: /*s/ Brian Wilson*
BRIAN WILSON (Atty No. 6294099)
Nathan & Kamionski LLP
206 S Jefferson St.
Chicago, IL 60661
(312) 612-1955
bwilson@nklawllp.com
*Attorney for Defendants*

Dated: January 6, 2025