IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DANNY WILBER | ) |
| | ) |
| Plaintiff, | ) Case No. 23-cv-951 |
| | ) |
| v. | ) Hon. J.P. Stadtmueller |
| | ) |
| CITY OF MILWAUKEE, et al, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO PARTIALLY PLAINTIFF'S PATHOLOGIST EXPERT LINDSEY THOMAS

Plaintiff disclosed Lindsey Thomas as Plaintiff's forensic pathology expert. (*See* Ex. A (Thomas Report).) For the reasons discussed below, Defendants now ask the Court to bar Dr. Thomas from offering testimony regarding opinions 6-8 in her report.

## INTRODUCTION

Plaintiff filed this lawsuit pursuant to 42 U.S.C. §1983 alleging violations of his constitutional rights stemming from his prosecution and conviction for the murder of David Diaz which occurred on January 31, 2004. Specifically, Plaintiff alleges his due process rights were violated when he was convicted based on fabricated witness statements and reports. In support of his claims, Plaintiff retained Dr. Thomas, a forensic pathologist expert. Thomas prepared a report containing nine opinions stated as answers to questions posed by Plaintiff's counsel. Defendants seek to bar Dr. Thomas from testifying about opinions 6, 7 and 8:

> 6. Based on the position David Diaz landed after being shot (i.e., lying face down in the kitchen with his hands under his hips, head facing north, feet to the south, legs outstretched), the trajectory of the gunshot wound, and the location of blood, biological spray, bullet fragments and the bullet jacket, what direction was David Diaz facing when he was shot?
>
> - OPINION: Based on the fact that Mr. Diaz sustained a gunshot wound with an entrance on the left back of his head and an exit on the right front of his head, the

1

fact that the bullet fragments were found behind the stove, which was due north of Mr. Diaz' body, and the injuries sustained by Mr. Diaz (which I believe would have caused him to collapse in the position in which he was standing), I believe that he was facing north and possibly slightly west at the time he was shot.

7. Based on your analysis of the photos, and diagrams, if David Diaz was standing no more than 12" north of the kitchen/living room entryway (versus the 3'6" and 3'0" Detective Casper indicated in his diagrams and trial testimony), when shot, could the fatal shot have been fired by any person in the kitchen standing north or northwest of David Diaz?

- OPINION: I do not believe so. The physical evidence supports the idea that Mr. Diaz was facing north in the kitchen and was shot from behind. Therefore, I believe it is unlikely that someone standing in the kitchen north or northwest of him shot him.

8. What area of the home was the gunshot fired from?

- OPINION: It is my opinion that the shot was fired from behind Mr. Diaz, which would have been either in the kitchen behind him, in the doorway between the kitchen and the living room, at the foot of the stairs to the 2nd floor, or just inside the living room.

Federal Rule of Evidence 702, which governs the admissibility of expert witness testimony, provides that a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent of the expert demonstrates to the court that it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702; *see also Artis v. Santos*, 95 F.4th 518, 525 (7th Cir. 2024); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009) (The proponent of the expert bears the burden of demonstrating the admissibility of the expert's testimony). The Court explained in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) that a federal trial judge's role is to act as "gatekeeper" by ensuring that expert

2

testimony is both relevant and reliable. *Id.* at 597. To make this determination, courts consider: "(1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education; (2) whether the testimony has a reliable basis in the knowledge and experience of the relevant discipline; and (3) whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Driver v. Apple Illinois, LLC*, No. 06 C 6149, 2011 WL 4007337, at *2 (N.D. Ill. 2011) (citing *Myers v. Ill. C.R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010); *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007)).

Recent changes to Rule 702, which took effect on December 1, 2023, amended the rule's language to address the concern that courts were not sufficiently gatekeeping expert opinions. Prior to the amendment, the requirement in Rule 702(d) read "the expert has *reliably applied* the principles and methods to the facts of the case." But in 2023 the requirement was amended to read, "the expert's *opinion reflects a reliable application* of the principles and methods to the facts of the case." Fed. R. Civ. P. 702(d) (emphasis added). This amendment highlights the deficiency in Dr. Thomas' disputed opinions – they do not reflect a reliable application of any methodology to the facts of the case. Instead, the opinions are stated as bald, unsupported conclusions. Dr. Thomas' opinions 6, 7 and 8 are summarily stated, without any analysis or methodology, and based on speculation, not fact. As such, they are irrelevant, not helpful to the jury and should be barred.

## ARGUMENT

### I. Thomas is not qualified to opine on the matters in opinions 6, 7 and 8.

Although an expert may be qualified to render opinions based solely on their experience, the expert's experience must inform the specific opinions they intend to offer. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000); *Jordan v. City of Chicago*, No. 08 C 6902, 2012 WL 254243, at *3 (N.D. Ill. Jan. 27, 2012). While Dr. Thomas is certainly an experienced forensic

3

pathologist, qualified to offer opinions regarding autopsies, forensic pathology is not the subject matter of the three contested opinions 6, 7 and 8. These opinions do not concern the victim's autopsy and do not concern the work of the medical examiner who conducted the autopsy in this case. Instead, the opinions concern ballistics analysis, blood splatter analysis and crime scene reconstruction. And while there certainly are forensic pathologists whose experience and training qualify them to offer opinions in these subject matters, Dr. Thomas is not one of them.

There is nothing in Dr. Thomas' C.V. or testimony list which indicates she has any experience in trajectory analysis or crime scene investigation and reconstruction. (*See* C.V. and testimony list, attached hereto as Exhibit B). She has not taught classes on those subjects, given lectures on those subjects, or published in those subjects. And while analyzing wound ballistics certainly is a routine aspect of forensic pathology, the three disputed opinions extend far beyond that limited subject matter, into crime scene reconstruction and external ballistics analysis. Dr. Thomas does not have that specific specialized knowledge and thus, should be barred from testifying regarding opinions 6, 7 and 8.

According to Rule 702, a person may be qualified as an expert based on his knowledge, skill, experience, training, or education. Fed. R. Evid. 702. However, in evaluating a witness's qualifications to testify as an expert, "[t]he question the Court must ask is not whether an expert witness is qualified in general, but whether his qualifications provide a foundation for him to answer a specific question." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). There is no indication in Dr. Thomas' opinions of how her pathology experience led her to the conclusions she reaches in opinions 6, 7 and 8. This Court should be "mindful that Rule 702, especially after the recent amendments, requires a focus on an expert's qualifications and the reliability of his methodology." *Brown v. City of Chicago*, No. 19 CV 4082, 2024 WL 3791634, *3 (N.D. Ill. August

4

13, 2024) (citing *Kopplin v. Wis. Cent. Ltd.*, 914 F.3d 1099, 1104 (7th Cir. 2019)). Dr. Thomas' qualifications do not allow her to answer the specific questions in opinions 6, 7 and 8 and accordingly, those opinions should be barred.

II.     **Opinions 6, 7 and 8 are the product of an unreliable and insufficient methodology**.

Dr. Thomas' lack of specialized knowledge to form the opinions is precisely why these opinions lack a discernable methodology. To answer the questions posed in 6, 7 and 8, an expert would need to utilize some methodology— live test-firing, software simulations, scene-recreations etc. Dr. Thomas does not utilize those methods, possibly because she does not have the expertise to do so, but problematically, she does not utilize *any* discernable methodology at all in answering the questions posed to her. Instead, she makes conclusory statements in opinions 6, 7 and 8 without providing any basis for those opinions, rendering them unreliable. Expert opinions that merely set forth conclusions, without any basis or reasonable analysis, are of no assistance to a jury. *Davis v. Duran*, 277 F.R.D. 362, 372 (N.D. Ill. 2011) citing *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) (affirming the district court's exclusion of an expert's affidavit that was "devoid of analysis").

Putting aside for a moment that opinion 7 is a response to a question that assumes unknown and disputed facts, rooted in speculation, the opinion itself is not based on any reliable methodology. Dr. Thomas did not conduct any scene recreations by setting up live-fire demonstrations or software simulations to see what possible positions the shooter could have been in to strike the victim under the hypothetical in question 7. There is no basis Dr. Thomas provides to support how she knows the victim was facing north, and how she knows a shooter standing north or northwest of the victim could not have shot him. Dr. Thomas does not provide any

5

accounting for how she knows the victim's head position at the time he was shot. She simply makes a conclusory statement.

The lack of any methodology is most clear in opinion 8, where Dr. Thomas opines on what area of the home the gunshot originated, without providing any support whatsoever for her opinion. She utilizes no specialized skills or training to draw her opinion. Again, her opinion would require some sort of reconstruction to be reliable and there is no such reconstruction. In fact, the question itself posed at number 8 lacks sufficient details that would even *allow* an expert to answer that question. Based on the facts of this case, the facts known and the ones unknown, there are multiple possibilities about the exact position of the shooter. But it is irrelevant to resolving this case what that exact position was (as explored in the next section, *infra*). Additionally, the answer to question 8 is contingent on unknown facts, such as, did the bullet strike any object before it entered the victim's head, or strike any bone inside the victim's head? Was the victim's head turned or tilted in any direction when he was struck? Did the bullet fragments strike any object upon their exit of the victim's head before finally resting underneath the stove? Were they kicked underneath the stove? None of these variables (or any variables at all) are addressed in question 8 and none of these variables are addressed in Dr. Thomas' answer to question 8 because there was no methodology utilized to test what area of the home the gunshot was fired from. A reliable answer to question 8 would require some sort of analysis and testing to be deemed reliable.

An expert witness "must explain how he reaches his conclusions– either by linking them to generally accepted standards in the field or by citing information within his own practical experience." *Blackmon v. City of Chicago*, No. 19 C 767, 2022 WL 21296465, *3 (N.D. Ill. Aug. 30, 2022) (citing *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013) ("The critical inquiry is whether there is a connection between the data employed and the opinion offered.");

*Potts v. Manos*, No. 11-cv-3952, 2017 WL 4365948, *5 (N.D. Ill. Sept. 29, 2017) ("A witness who offers expert testimony based on his experience must connect his experience to the facts of the case in order to meet the standard for reliability under Daubert and the Federal Rules of Evidence."); Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.") Dr. Thomas does not state what her methodology is for the three contested opinions, she does not explain how she came to her findings, or what professional standards she relied upon to reach her opinions, she simply states conclusions. *See Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.*, 521 F.3d 790, 791 (7th Cir. 2008) (asserting that *ipse dixit* testimony is inadmissible).

In evaluating the sufficiency of Dr. Thomas' methodology, the case *Estate of Pero v. County of Ashland* is instructive. No. 2022 WL 93425 (W.D. Wis. January 10, 2022). In *Pero,* the plaintiff brought a §1983 suit against the defendant officer for excessive force stemming from a fatal shooting. In granting defendant summary judgment, the court barred the plaintiff's forensic pathologist expert's opinions regarding how the shooting occurred, finding the expert had not utilized a reliable methodology:

> Plaintiff has failed to demonstrate that Blum's methodology – analyzing pieces of evidence and superimposing a narrative of events that 'fits' – is a reliable method of arriving at the specific conclusions he draws in this case…Nor has Blum shown that his method of reconstructing a crime scene – including the precise movements of a deceased victim as and after he was shot – is one that is typically performed in the field of forensic science and known to produce reliable results.

*Id.* at 11. The court noted the pathologist had made assumptions about the victim's body position at the time of the shooting and "[a]s an expert, Blum cannot create his own factual record to support his opinions" and that the court could consider whether the expert's methodology had been

7

contrived to reach a particular result. *Id.* As in this case, in *Pero,* the expert "failed to account for alternative explanations that could account for the relative differences in the angles of the wound paths…such as a slight change in [the officer's] arms or hands, a change in the distance between [the victim and officer] when the shots were fired, or the possibility that one or both of them were not standing entirely erect at the time the shots were fired." *Id.* at 12. The court noted that the testimony about the positions of the victim and officer were not precise and when added to that, "all the other unknowns, such as how far apart [victim and officer] were standing…the foundation for Blum's opinion crumbles." *Id.*

Acknowledging that forensic pathologists are sometimes permitted to offer opinions as to whether autopsy evidence is consistent with certain positions, the *Pero* court found that Blum's opinions were too largely based on speculated facts and assumptions, not factual evidence: "In short, Blum's opinions on positioning and shot sequencing rest on too many logical leaps of faith to be reliable." *Id.* Finally, *Pero* rejected the plaintiff's argument that Blum was a highly qualified physician, finding that while that was true, it did not explain "*how* Dr. Blum's expertise informed his opinion" particularly where he had cited "no treatises, scholarly articles, or professional publications supporting Blum's very specific opinion, and he offered nothing from his own experience that informed his conclusion." *Id.* at 12-13.

It should follow here, as it did in *Pero,* that Dr. Thomas' opinions 6, 7 and 8 do not indicate any reliable methodology or expertise and are predicated on speculated circumstances and as such, should be barred. Certainly, Dr. Thomas' report does not establish, as is now required by the recent amendment to Rule 702, that it is "more likely than not" that her "opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b). In sum,

8

due to Dr. Thomas' failure to appropriately link opinions 6, 7 and 8 to any reliable methodology, she should not be allowed to testify to them at trial.

**III.     Dr. Thomas' opinions 6, 7 and 8 will not assist the trier of fact because they are speculative, do not address the issues of the case, and do not require expert knowledge.**

"The touchstone of admissibility under Rule 702 is helpfulness to the jury." *U.S. v. Benson,* 941 F.2d 598, 604 (7th Cir. 1991) amended on unrelated grounds, 957 F.2d 301 (7th Cir. 1992). "An expert's opinion is helpful only to the extent the expert draws on some special skill, knowledge, or experience to formulate that opinion; the opinion must be an *expert* opinion (that is, an opinion informed by the witness' expertise) rather than simply an opinion broached by a purported expert." *Id.* Although an expert witness may provide opinions regarding factual issues and rely on factual assumptions in forming those opinions, "[u]nless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury…" *U.S. v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996).

To be admissible, expert testimony must assist the trier of fact in understanding the evidence or determining ***a material fact*** in question. *See Daubert*, 509 U.S. at 592-93. Dr. Thomas' opinions are not helpful to the jury because they are not based on the facts of the case but instead based on unproven assumptions that alter the very relevancy of the opinions themselves. As such, the speculative nature of Dr. Thomas' opinions 6, 7 and 8 renders those opinions irrelevant. An expert "may be barred under Rule 702 where the opinion proffered calls for speculation or expertise in a field outside of the expert's purview." *Cage v. City of Chicago*, 979 F. Supp. 2d 787, 822 (N.D. Ill. 2013). The three contested opinions are not helpful to the jury because they are answers to questions based on hypothetical facts. For example, opinion 6 is a response to a question that assumes the trajectory determined by Plaintiff's other expert, Timothy Palmbach (who Defendants seek to bar in a separate motion), a trajectory that was also determined without any

methodology. The question also assumes that the location where the bullet fragments were found is the original location where they were expelled. These are unknown facts with answers that cannot not be resolved at trial and so an opinion based on these assumptions is irrelevant for the jury to consider.

Additionally, opinions 6, 7 and 8 do not utilize any expertise— Plaintiff's counsel can make the same arguments regarding what direction the victim was facing when he was shot and where the shooter was standing, based on the same speculated facts, without any expert testimony. In fact, the only portion of the contested opinions which utilizes expertise is where in opinion 6, Dr. Thomas opines that the victim would have instantly collapsed, an opinion that is redundant of opinion 1, which Defendants do not seek to bar. Where Dr. Thomas is not utilizing expertise to form her opinions, those opinions are not helpful to the jury. "[E]xpert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions without the introduction of a proffered expert's testimony." *Aponte v. City of Chicago*, No. 09 C 8082, 2011 WL 1838773, at *2 (N.D. Ill. May 12, 2011); *see* David H. Kaye, David E. Bernstein and Jennifer L. Mnookin, The New Wigmore: A Treatise on Evidence: Expert Evidence, § 2.1.2 ("If an expert's testimony does nothing more than attorneys can do in final arguments, it is not admissible because it is providing not knowledge, but mere opinion and advocacy.")

Finally, Plaintiff's complaint alleges evidence fabrication in the form of witness statements and reports. Dr. Thomas' opinions do not inform these issues. *See Daubert*, 509 U.S. at 597 (federal trial judge must act as gatekeeper by ensuring expert testimony is both relevant and reliable). Instead, Dr. Thomas' opinions seem to be offered to help re-try the plaintiff's criminal trial, where Plaintiff's guilt was central to the case. Here, the question of evidence fabrication is central to the

case. Exactly where the gunshot was fired from and the position of the victim are irrelevant to addressing the issues in this case. An expert's admissibility is predicated on the relevancy of his testimony— his testimony must help the jury make decisions relating to facts of consequence in the determination of the action. *See Daubert,* 509 U.S. at 587. Because Dr. Thomas' testimony is irrelevant to the central issue of evidence fabrication, she should be barred from testifying as to the contested opinions.

## CONCLUSION

The Court should bar the testimony of Dr. Thomas as to opinions 6, 7 and 8 pursuant.

Date: January 17, 2025

Respectfully submitted,
/s/ *Brian Wilson (Atty. No. 6294099)*
One of the attorneys for Defendants

Kathryn Doi
Brian Wilson
Warren Fasone
Rob Crawford
**NATHAN & KAMIONSKI LLP**
206 S. Jefferson St.
Chicago, IL 60661
bwilson@nklawllp.com

*Counsel for all Defendants*