UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| DANNY WILBER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) | Case No. 23-cv-951 |
|  | ) |  |
| v. | ) | Hon. Judge J.P. Stadtmueller |
|  | ) |  |
| CITY OF MILWAUKEE, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

**DEFENDANTS' MOTION *IN LIMINE* NO. 2 - TO BAR EVIDENCE
OR ARGUMENT CONCERNING *AVERY V. MILWAUKEE, ET AL*., NO. 2:11-CV-408**

**I.     Statement of the Issue Presented**

Defendants move *in limine* to bar any evidence or argument at trial regarding the prior lawsuit of *Avery v. City of Milwaukee, et al.*, case number 2:11-CV-408, including the partial opinion of this matter that Plaintiff has identified as a trial exhibit.

**II.     Recitation of the Relevant Facts**

In February 1998, Maryetta Griffin was murdered. *Avery v. City of Milwaukee*, 847 F.3d 433, 435 (7th Cir. 2017). In March 1998, William Avery was interrogated by Milwaukee Police Detectives about the murder. Two such detectives – Phillips and Hernandez – prepared police reports stating that Avery confessed at some point during the interrogations. *Id.* at 435-36. The District Attorneys' office chose not to prosecute Avery for the murder based on the reports alone, but Avery was charged and convicted of drug offenses and sentenced to prison. *Id.* at 436.

In 2003, MPD detectives Hernandez and Hein (the latter now Spano) interviewed inmate Keith Randolph, who stated that Avery had admitted to killing Griffin. *Id.* Another inmate who had spoken to Avery in prison, Antron Kent, was interviewed several times by detectives Armbruster, Heier, Hernandez and Hein, and eventually also said Avery admitted to the murder. *Id.* at 436-37.

1

Finally, the same detectives also conducted multiple interviews of inmate Jeffery Kimbrough, who also implicated Avery. *Id.* at 437.

In 2004, Avery was charged with Griffin's murder, and was convicted after trial in 2005. *Id.* Years later, DNA evidence from the crime scene was matched with Walter Ellis, who was eventually exposed as a serial killer of women in the Milwaukee area. *Id.* Avery's conviction was therefore vacated, and he sued the City of Milwaukee and the above-named detectives, claiming that (1) his March 1998 confession was fabricated by detectives Phillips and Hernandez, and (2) the jailhouse informants were coerced by the detectives to falsely inculpate Avery. *Id.* Avery also brought a "*Monell*"[1] claim, alleging the City had a policy and practice of pursuing wrongful convictions "through profoundly flawed investigations and coerced evidence." (Ex. A (Avery's Am. Compl.,) ¶ 58.)

At trial, only detectives Phillips and Hernandez were found liable for fabricating Avery's 1998 confession. *Avery*, 847 F.3d at 437-38. The City of Milwaukee was also found liable on the *Monell* claim, finding that the City had "a policy, custom or practice of inadequately investigating homicides at the time in question which led to the fabrication of evidence" against Avery. (Ex. B (*Avery* verdict form), p.5.)[2]

## III. Defendants' Arguments in Favor of the Motion

### A. Evidence and Argument of the *Avery* Case Should Be Barred Because It Is Not Relevant To This Case.

Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed.

---

[1] Named after the case of *Monell v. Dep't of Social Services of New York*, 436 U.S. 658 (1978).

[2] Avery's *Brady* claims against Hein Spano and other defendants were dismissed by the district court at summary judgment and reinstated by the Seventh Circuit after the jury verdict. Avery, 847 F.3d at 437, 443-44.

2

R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. of Evid. 402. The Avery case is obviously irrelevant to the claims against the individual defendants in this action, as none of the parties or facts overlap. Instead, Plaintiff purportedly intends to introduce evidence regarding the *Avery* case to support Plaintiff's *Monell* claim against the City. But nothing about Avery is relevant to Plaintiff's *Monell* claim.

   i. ***Avery* is not relevant to Plaintiff's *Monell* claim because the only wrongdoing that occurred in *Avery* happened six years prior to the alleged wrongdoing here.**

In this case, Plaintiff claims that evidence against him was fabricated and/or witnesses were coerced to inculpate Plaintiff in February 2004 (with the allegedly fabricated evidence and coerced testimony eventually being used at trial in 2005). It is clear the only wrongdoing found in *Avery* was the fabrication of Avery's confession by detectives Phillips and Hernandez in March 1998. *See Avery*, 847 F.3d at 435-37; *see also* Ex. B, pp. 2-5. It is further clear that the jury only found a practice of "inadequately investigating homicides *at the time in question*," which, again, was March 1998. (*See* Ex. B, p.5.) That is a *six-year* gap between the fabrication of Avery's confession and the alleged fabrication of evidence in this case. Whatever policy or practice the jury actually found existed in 1998 – which is difficult to know in its own right, as discussed below – is not relevant to establishing any policy or practice as of 2004. *See Thomas v. City of Markham*, No. 16-CV-08107, 2017 WL 4340182, *5 (N.D. Ill. Sept. 29, 2017) (nothing that a five-year gap between earlier alleged wrongdoing and the alleged wrongdoing in the present case did not establish a municipal policy caused the plaintiff's injury).

   ii. ***Avery* is not relevant to Plaintiff's *Monell* claim because it is unclear what policy the jury found existed in 1998.**

The *Avery* jury found a City "policy, practice or custom of inadequately investigating homicides at the time in question…." (*See* Ex. B, p.5.) The phrase "inadequately investigating

3

homicides" is extremely vague: it could include inadequately finding or preserving physical evidence, locating and interviewing witnesses, staffing, record keeping, etc. The jury did not answer special interrogatories on what aspect of investigating homicides was inadequate, so it cannot be determined if whatever the jury had in mind in Avery overlaps (and thus has any relevance) with whatever conduct underlies Plaintiff's *Monell* claim here.

      **iii.**      ***Avery* is not relevant to Plaintiff's *Monell* claim because the relevant policymaker in 1998 in that case, and the relevant policymaker in 2004 in this case were not the same.**

In order for a widespread custom or practice to be actionable under *Monell*, a plaintiff must show that the defendant entity's "policymakers were deliberately indifferent as to [the] known or obvious consequences" of the practice. *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). The Seventh Circuit has recognized that under Wisconsin law, the Chief of Police is the appropriate policymaker for police departments. *See Chortek v. City of Milwaukee*, 356 F.3d 740, 749 (7th Cir. 2004).

In 1998, when Avery's confession was fabricated, the Milwaukee Chief of Police was Arthur Jones.[3] In 2003, Nannette Hegerty became the new Chief of Police (the year before Plaintiff claims evidence against him was fabricated).[4] Because establishing deliberate indifference by a relevant policymaker is required to establish a harmful widespread custom or practice for *Monell* liability, and because the relevant policymaker changed between Avery's fabricated confession and the allegedly fabricated/coerced evidence against Plaintiff, *Avery* does not establish that an

---

[3] See https://city.milwaukee.gov/ImageLibrary/Groups/cityFPC/Reports/FPC_125.pdf, p.22 (last visited 1/16/2025); *see also Pickett v. Sheridan Health Care Center*, 664 F.3d 632, (7th Cir. 2011) (courts can take judicial notice of information on government websites).
[4] *Id.*

4

actionable practice of inadequately investigating homicides (whatever that specifically means) existed in 2004.

> **B.      Even if *Avery* Is Somehow Relevant To Plaintiff's Lawsuit, Any Probative Value Is Substantially Outweighed by the Danger of Unfair Prejudice.**

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of, *inter alia*, unfair prejudice, confusing the issues or misleading the jury. Fed. R. Evid. 403. Here, even if *Avery* – a case where the wrongdoing occurred six years prior to the alleged wrongdoing here, where it was described in an extremely vague manner, and when it occurred under a different chief of police – has some probative value here, it is very slight and is substantially outweighed by the risk of unfair prejudice and confusion.

As more fully explained in Defendants' motion to bifurcate the *Monell* claim from the claims against the individual defendants, substantial risk of prejudice exists when a jury hears evidence of alleged or proven wrongdoing by non-defendant officers in different investigations or lawsuits. *See*, *e.g.*, *Estate of Heenan ex rel. Heenan v. City of Madison*, 111 F. Supp. 3d 929, 948-49 (W.D. Wis. 2015); *Lopez v. City of Chicago*, No. 01 C 1823, 2002 WL 335346, *2 (N.D. Ill. Mar. 1, 2002) (citing cases); *Veal v. Kachiroubas*, 2014 WL 321708 at *6 (N.D. Ill. Jan. 29, 2014) ("evidence . . . regarding [an] [entity]-wide policy, practice or custom involving multiple improper [individual] actions poses a danger of undue prejudice to the [individuals] by creating the perception that the [entity] routinely acts improperly, even if the [individuals] acted properly in this case.").

Defendants urge the Court to consider the practical reality that if Plaintiff is able to smear the City and its police force generally with cases like *Avery*, there is a substantial likelihood that will taint the jurors view of the individual defendants (who were part of that police force). *See*, *e.g.*, *Sopron v. Cassidy*, No. 19-cv-08254, No. 21-cv-05525, No. 22-cv-00320, 2023 WL 3213713,

5

*4 (N.D. Ill. Sept. 22, 2023) ("Plaintiffs seek to admit decades of evidence concerning a number of issues unrelated to the Section 1983 claims. It is possible, perhaps probable, that a jury would, by association, impermissibly tag the Individual City Defendants and the City with unjustified accountability after having been presented with evidence to that effect."). Therefore, any mention, argument or testimony about this case by any witness in this case should be barred.

IV.     **Plaintiff's Response in Opposition to the Motion**

Defendants' motion should be denied because evidence from the *Avery* case that MPD homicide detectives fabricated evidence and withheld exculpatory and impeachment evidence is highly relevant to Plaintiff's *Monell* claim. Plaintiff alleges that the City of Milwaukee had a widespread custom of fabricating evidence and/or concealing exculpatory and impeachment evidence which caused the violation of Plaintiff's right to a fair trial. Other instances in which MPD homicide detectives committed similar police abuses are relevant to establishing that the custom was widespread. *See Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (to succeed on a *de facto* custom theory, "plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents"); *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009).

Plaintiff intends to introduce evidence of a pattern of fabrication of evidence and concealment of exculpatory evidence by MPD homicide detectives and MPD's related policies and practices through the testimony of Katherine Hein Spano, Rule 30(b)(6) witness William Jessup, the Defendants, and Plaintiff's police practices expert Thomas Tiderington. Evidence of the pattern of fabrication of evidence and concealment of exculpatory evidence from the *Avery* case – where a jury rendered a verdict in favor of the *Avery* on the exact same *Monell* claim Plaintiff

6

asserts here – is highly relevant because it shows the widespread and long-standing nature of the pattern and that it continued before and during the Diaz homicide investigation and beyond.

Defendants' contention that the *Avery* case is irrelevant because the Griffin homicide investigation occurred "six years prior" to the David Diaz homicide investigation is unpersuasive. As an initial matter, the Griffin homicide investigation spanned from 1998 to 2003, so it is inaccurate to say that it occurred "six years prior." *See Avery*, 847 F.3d at 436 ("Detectives Hernandez and Katherine Hein interviewed Randolph in prison in October 2003"). Moreover, there is no bright line rule regarding the relevant time period for a widespread practice claim. Courts routinely order the production of *Monell* discovery for a five-year period preceding an event. *See, e.g., Awalt v. Marketti*, 2012 U.S. Dist. LEXIS 177933, 2012 WL 6568242, at *6 (N.D. Ill. Dec. 17, 2012); *Padilla v. City of Chicago*, 2011 U.S. Dist. LEXIS 92476, 2011 WL 3651273, at *4 (N.D. Ill. Aug. 18, 2011); *Johnson v. City of Joliet*, 2007 WL 495258, at *4 (N.D. Ill. Aug. 18, 2011); *see also See Grayson v. City of Aurora*, No. 13 C 1705, 2013 U.S. Dist. LEXIS 177933, at *12 (N.D. Ill. Dec. 19, 2013). The one case Defendants cite – *Thomas v. City of Markham*, No. 16-CV-08107, 2017 WL 4340182, *5 (N.D. Ill. Sept. 29, 2017) – is inapposite as it is a decision on a motion to dismiss that did not involve the type of *Monell* claim at issue in this case.

Contrary to Defendants' argument, it is not "unclear" what policy the jury found in *Avery*. Avery's claims were that the defendant MPD homicide detectives denied him a fair trial by fabricating evidence and withholding exculpatory and impeachment evidence, and that the City of Milwaukee had a "policy, practice, or custom of inadequately investigating homicides at the time in question which led to the fabrication of evidence resulting in the plaintiff William Damon Avery's homicide conviction." *See* Ex. B, p. 5. There is nothing unclear about that verdict (which was reinstated by the Seventh Circuit). *See Avery*, 847 F.3d at 443.

Defendants' argument regarding the final policymaker is also without merit. As an initial matter, since the Griffin homicide investigation, as shown above, was open until at least October 2003, which is only several months prior to the Diaz homicide investigation, Chief Hegerty was the policymaker during both investigations. Furthermore, even if there were different policymakers during both investigations, that fact in no way undermines the relevancy of the *Avery* evidence as it pertains to the issue of a widespread pattern. The question of deliberate indifference is a separate issue and can be proven by showing that City policymakers had constructive notice that the widespread practice caused the violation of citizens' constitutional rights, which is the precise purpose of the *Avery* evidence. *See J.K.J. v. Polk Cty.*, No. 15-cv-428-wmc, 2017 U.S. Dist. LEXIS 13320, at *4-5 (W.D. Wis. Jan. 31, 2017).

For all of these same reasons, Defendants' Rule 403 argument fails. The probative value is high and the prejudicial effect, which Defendants vaguely describe using boilerplate language, is low and can be eliminated entirely with jury instructions if necessary.

Accordingly, Defendants' motion to *in limine* should be denied.

Respectfully submitted,

| | |
|---|---|
| **PLAINTIFF,** <br> **DANNY WILBER** | **DEFTS. CITY OF MILWAUKEE AND** <br> **INDIVIDUAL DEFENDANTS** |
| By: /s/ Ben H. Elson | By: /s/ Kathryn Doi (#6274825)* |
| One of His Attorneys | One of Their Attorneys |
| Ben H. Elson, G. Flint Taylor, <br> Nora Snyder, Brad Thomson <br> PEOPLE'S LAW OFFICE <br> 1180 N. Milwaukee Ave. <br> Chicago, IL 60642 <br> (773) 235-0070 | Kathryn Doi, Brian Wilson <br> Robert Crawford, Warren Fasone <br> NATHAN & KAMIONSKI LLP <br> 206 S. Jefferson St. <br> Chicago, IL 60661 <br> (312) 612-1086 |
| | *Admitted to practice in the U.S. Dist. Court, Eastern District of Wisconsin |

8

## Certificate of Service

I, Kathryn Doi, the undersigned attorney, hereby certify that I caused a copy of the foregoing document to be electronically filed with the Court's CM/ECF system which sent an electronic copy of the same to be sent to all counsel of record on the date stamped in the margin of this document.

                                              /s/ Kathryn Doi

9

Case 2:23-cv-00951-JPS     Filed 01/17/25     Page 9 of 9     Document 111